TEXAS EMPLOYERS INS. ASS'N v. ARNOLD.

No. 13631.

Court of Civil Appeals of Texas. Fort Worth.

Feb. 4, 1938.

Rehearing Denied March 25, 1938.

Lawther & Cramer and Wm. M. Cramer, all of Dallas, for appellant.

Bailey & Shaeffer, of Dallas, for appellee.

BROWN, Justice.

Jim Arnold, appellee herein, who was employed by Brown Cracker & Candy Company, which company carried a workmen's compensation policy with appellant, Texas Employers Insurance Association, made his claim before the Industrial Accident Board, asserting that on the 17th day of August, 1928, he sustained a personal injury, while performing the duties for which he was employed.

At the instance of the attorneys employed by the said Arnold, he went to a physician of his selection, who examined him and who made a report to the said board, in which the following statement and conclusion appears: "It is my impression that this man ruptured a blood vessel in the left posterior side of his brain, due to strain. The chain of symptoms, namely, left headache, right eye, difficulty in swallowing and speaking, loss of grip in the right hand and swelling of the right foot, all indicate a blood clot in the left side of the brain. It is my opinion that this man is totally and permanently disabled for doing manual labor, on account of the formation of this blood clot."

The Industrial Accident Board, on the 16th day of November, 1928, made its final ruling and decision, in favor of Arnold, awarding him compensation at the weekly rate of $13.85 for 400 weeks, from and after the date of the injury. From this award and final ruling of the board, appellant, the insurance carrier, perfected an appeal to the district court of Dallas county, Tex., and appellee, Arnold, answered with a complete cross-action, asserting total and permanent disability.

About one year after appellee claims to have sustained the injury complained about, he made and entered into an agreed judgment in his favor in the sum of $1,300. Appellee signed the settlement agreement, and likewise signed the agreed judgment. Upon receipt of the money due him under this agreed judgment, appellee purchased an automobile and married a wife, and drove the automobile, accompanied by his wife, to the state of California, and on his return secured other employment, and, while engaged in the performance of his duties under the same, had a second stroke of paralysis. He then brought suit in the district court which had rendered the agreed judgment in full settlement of his claims against the insurance company, which suit was filed on November 7, 1930, in the nature of a bill of review, and attacks this judgment and settlement agreement, on the theory that the physician, by whom he was examined at

the instance of the insurance carrier, fraudulently induced him to make the settlement and agree upon the judgment rendered, by reporting that appellee had recovered in whole, or in substantial part, from his injuries, and was capacitated for work, on all of which he relied in making his settlement. Appropriate answer was made by the insurance carrier to this plea.

The cause being tried to a jury, same was submitted on special issues. The first four issues cover the questions of Arnold's employment and the personal injuries sustained in the course of his employment.

Issue No. 5 inquired whether or not Arnold was totally incapacitated for work, as the result of his injuries. The jury answered "Yes."

To issue No. 6 the jury found that the total incapacity sustained naturally resulted from Arnold's injury; and to issue No. 7 the jury found that Arnold's total incapacity was permanent.

After the submission of these seven issues, the charge of the court contains the following language: "If you have answered special issues 5 and 7 by 'yes', you will not answer special issues 8, 9, 10 and 11; if you have answered special issues 5 and 7 by 'no', you will answer special issues 8, 9, 10 and 11; but if you have answered special issue No. 5 'yes' and special issue No. 6 by 'no', then you will answer special issues 8, 9, 10 and 11."

Issue No. 8 inquired the number of weeks Arnold suffered total incapacity.

Issue No. 9 submitted the question of Arnold's partial incapacity following the period of total incapacity found by the jury.

Issue No. 10 inquired as to the number of weeks Arnold suffered partial incapacity, following the period of total incapacity.

Issue No. 11 inquired as to the percentage of Arnold's partial incapacity.

After the submission of these eleven issues, the following language is found in the charge: "If you have answered special issue No. 5 by 'yes', then you will not answer special issues 12, 13, 14 and 15; if you have answered special issue No. 5 by 'no', then answer special issues 12, 13, 14 and 15."

Special issue No. 12 required the jury to find whether or not Arnold's partial incapacity directly resulted from his injuries.

Issue No. 13 required the jury to find the percentage of Arnold's incapacity, caused by his injuries.

Issue No. 14 required the jury to find whether or not the partial incapacity was permanent.

Issue 15 required the jury to find the number of weeks Arnold's partial incapacity continued from the date of his injury.

Issue 16 inquired of the jury whether or not Arnold worked in the employment in which he was working at the time of his injuries for the same employer, substantially the whole of the year preceding his injuries, to which the jury answered "Yes."

To issue 17 the jury found the average daily wage of Arnold to be $4.

Issue 18 reads as follows: "Do you find and believe from a preponderance of the evidence that Dr. Guy F. Witt stated to Jim Arnold shortly after he had been examined by Dr. Guy Witt, in substance that he, Dr Witt, had found that the plaintiff, Jim Arnold, was all right and could safely go back to work at any time he, Jim Arnold, wanted to do so?" To this the jury answered "Yes." Dr. Witt was the physician to whom Arnold was sent for an examination by the insurance carrier prior to making his settlement and entering into the agreed judgment which he seeks to avoid.

Issue 19 required the jury to find whether or not the statements made by Dr. Witt were believed by Arnold to be true. The jury answered "Yes."

To issue 20 the jury found that Arnold relied upon the truth of such statements.

To issue 21 the jury found that the doctor's statement was untrue.

To issue 22 the jury found that Arnold did not discover the untruth of the doctor's statement within 30 days after August 21, 1929. The agreed judgment was entered into and rendered on August 21, 1929.

To issue 23 the jury found that Arnold was not negligent in failing to discover the untruth of the doctor's statement.

To issue 24 the jury found that the doctor's statements were made for the purpose of causing Arnold to make a settlement with the defendant.

Issue 25 reads as follows: "Do you find and believe from a preponderance of the evidence that the making of such statement or statements, if any, and the contents therein, caused the plaintiff to agree to the alleged settlement of date August 21st, 1929?" The jury answered the issue "Yes."

To issue 26 the jury found that Arnold's failure to contest the suit then pending in the district court of Dallas county was because of his belief in and reliance on the statement of Dr. Witt.

To issue 27 the jury found that the first stroke of paralysis suffered by Arnold on August 17, 1928, was not the result of disease, and to issue 28 a like finding was made concerning the second stroke of paralysis suffered by Arnold.

To issue 29 the jury found that none of the disabilities which they had found in answering the preceding issues resulted from the second stroke of paralysis.

To issue 30 the jury found that the second stroke of paralysis was the direct and proximate result of the injuries received by Arnold on the 17th day of August, 1928.

To issue 31 the jury found that the disabilities suffered by Arnold, beginning August 17, 1928, did not result from disease or congenital condition of the blood vessel, combined with a strain.

To issue 32 the jury found that the present disability of Arnold is not the result of disease or congenital weak blood vessel, unaffected by the strain of August 17, 1928.

To issue 33 the jury found that the present disability of Arnold is not the result of a disease or congenital weak condition of the blood vessel involved and a second strain received by Arnold about two years after August 17, 1928.

To issue 34 the jury found that the present disability of Arnold was contributed to by the strain of August 17, 1928.

To issue 35 the jury found that the strain of August 17, 1928, contributed 100 per cent. to the present disability of Jim Arnold.

On this verdict judgment was rendered for the plaintiff, Arnold, avoiding the agreed judgment theretofore rendered by the district court on August 21, 1929, and awarding Arnold compensation for 400 weeks, at the rate of $13.85 per week, which was credited with the $1,300 that had theretofore been paid to Arnold under the agreed judgment. Motion for new trial having been filed and overruled, and proper exception taken, the insurance carrier appealed to the Court of Civil Appeals for the Dallas district, and the cause was transferred to this court by the Supreme Court of Texas.

This opinion is written after consideration of appellee's motion for rehearing, and the former opinion is by us withdrawn. It was pointed out to us in the motion that the first four propositions appearing in appellant's brief and the assignments of error under which they are submitted have been waived because of improper notations made in the transcript. That in truth and in fact the bill of review which is before us was actually filed and considered in the district court, wherein the original judgment sought to be avoided was rendered.

■ This brings us to the first assignment of error to be considered, which is the one that complains of the trial court refusing to give the insurance carrier, defendant below, an instructed verdict in its favor, when request was duly made therefor, after the court had heard all of the evidence, and the fifth proposition presents the question, in substance, as follows: That the evidence shows without dispute that Arnold, who seeks to set aside the former judgment settling his compensation claim, had the advice of his own lawyers and his own doctors at the time of and before the settlement agreement was made and the judgment was entered approving same, and that he was present when the judgment was entered, with his attorney, and the trial court erred in refusing to grant the instructed verdict. We believe the assignment of error is well taken.

It affirmatively appears that when appellee received his first stroke of paralysis, he consulted a physician of his own selection, to wit, Dr. Payne, and that this doctor advised him that he had suffered a stroke of paralysis, and had told him that it could have been caused by a strain or a shock. Appellee claims that his injuries followed a strain that he received while lifting a heavy barrel during the course of his employment. It likewise affirmatively appears that at the instance of attorneys whom appellee employed to file his claim before the Industrial Accident Board, appellee went to and was examined by a Dr. Rushing, and that the report of Dr. Rushing's examination was filed with the Industrial Accident Board, as a part of appellee's proof and claim for compensation.

We have quoted a part of the written statement made by Dr. Rushing for appellee above, and it shows that this physician was of the opinion that appellee was totally and permanently disabled.

It affirmatively appears that about a year after appellee suffered his first stroke of paralysis, he entered into negotiations with the insurance company to settle his claim and suit then pending in the district court

of Dallas county. The Industrial Accident Board had found him totally and permanently disabled, and had awarded him full compensation, and the insurance carrier had appealed from the judgment and award.

Appellee seeks to set aside the solemn judgment rendered in his favor and agreed to by him and his attorneys, following the negotiations for settlement, solely on the theory that the physician selected by the insurance carrier fraudulently induced him to make this settlement by his statement or statements, on which he relied, and we particularly call attention to use of the words "statement or statements," because it appears that this physician, namely, Dr. Witt, made a written statement of his findings, and at one place in Arnold's testimony he appears to inject an oral statement made to him by Dr. Witt. It will be noted that the charge of the court sometimes uses the word "statement," together with the word "contents," and sometimes uses the plural "statements."

In his testimony Arnold tells of being examined by other physicians, but he makes no contention with reference to such examinations. Boiled down, while testifying concerning the matters leading up to his settlement, Arnold said that he needed the money when he made his settlement, and shows that after he got the money he bought an automobile and married a wife, and they took a trip to California, and upon his return he sought and procured employment, which the jury finds continued for substantially a whole year before he received his second stroke of paralysis, while at work. He testified as to his physical condition when he made the settlement: "Well, it seems like I was all right." And further: "Well, I thought I was all right."

When asked the pointed question whether or not Dr. Witt ever told him what his (the doctor's) findings were, after having examined him, appellee answered ·emphatically "No." When asked if he ever saw Dr. Witt's written report, he answered emphatically "No," but testified that he knew that the doctor had made one, and that a representative of appellant insurance company had it. He testified that no representative of the appellant insurance company ever at any time said anything to him prior to the settlement agreement about Dr. Witt's report. When he was asked whether anybody said anything to him about what Dr. Witt had said was the matter with him, he answered: "Dr. Witt said there was no doubt but what I had had a stroke of paralysis, but he said that what caused it he didn't know."

Having previously testified that Dr. Witt had said nothing to him, after testifying as shown above, counsel asked appellee: "I thought you said a minute ago that Dr. Witt didn't say anything to you. What else did he say?" Appellee answered: "That is all." Appellee testified fully that none of the insurance carrier's representatives said anything to him about what Dr. Witt had recommended, and he was then asked:

"Q. Did anybody say anything to you about whether you were well and could go back to work? A. No.

"Q. Was there anything said in any conversation by Johnson or by Guthrie (these were agents of the insurance carrier) to the effect that Dr. Witt had found you all right and you could go back to work? A. No."

Finally, appellee's counsel propounded this question to him:

"Q. Why did you settle your case at that time? A. I thought the doctor knew what he was talking about.

"Q. What doctor? A. Dr. Witt.

"Q. What is the particular thing you thought you knew he was talking about? A. He said I would be able to go back to work at any kind of a job."

So far as we have been able to find in the record, we have given the strongest· evidence adduced by appellee to support his contention of fraud in inducing him to settle his case.

The written report by Dr. Witt shows that he was of the opinion that Arnold had a small hemorrhage in the internal capsule of the brain on the left side, and that it had been practically, if not completely, absorbed, and that he was doubtful of its actually giving Arnold any trouble at the time the examination was made, and the written statement concludes:

"It is my opinion that this man could at this time go back to light labor, and that in the course of a short while, possibly a month, could go back to his usual duties."

█ █ The proceeding instituted by appellee, Arnold, is purely an equitable proceeding, and one who seeks to recover in such a suit is bound by the principles of equity which govern the same. In Burguieres v. Farrell et al., 85 S.W.2d 952, 963, likewise a bill of review suit, this court, through the principal opinion delivered by·

the Chief Justice of the court, and two concurring opinions delivered by the Associate Justices, endeavored to make plain what we considered was the established law in this state, with regard to the right to set aside the solemn judgment of a court of competent jurisdiction, which has been agreed to by all the parties to the suit on the theory that fraud induced the complaining party to enter into the judgment. In the principal opinion, Mr. Chief Justice Dunklin cited and quoted from the case of Smith v. Ferrell, Tex.Com.App., 44 S.W.2d 962, the opinion being written by Mr. Justice Critz, who is now a member of the Supreme Court of Texas. Mr. Justice Critz has pointed out the fact that after the expiration of the term at which a judgment is rendered, the judgment becomes a vested right, which can only be divested by a direct proceeding filed for that purpose, and that when this proceeding is resorted to, the person presenting the bill in equity must bring himself strictly within the rules of law providing for relief in such cases. In the opinion it is said: "It is not enough that he plead and prove that he had a meritorious defense in the first instance, but he must go further and show that he was then free from negligence. In such case he is charged, as a matter of law, not only with what he knew during the term, but what he might have known had he used reasonable diligence."

This is undoubtedly the established law in Texas. We hold, therefore, that appellee, Arnold, knew what Dr. Payne, the physician of his own selection, thought of his condition, that he knew what Dr. Rushing, a physician of his attorney's selection, thought of his condition, and knew what opinion thereon Dr. Rushing rendered to the Industrial Accident Board. Furthermore, appellee is bound by all that his attorneys, who represented him in his law suit and in its settlement, knew, and all that both he and his attorneys, through proper diligence, could have learned. In the light of the record, as presented here to us, we hold as a matter of law that appellee cannot be heard to say under his own testimony and under the facts proved that he relied solely on either any oral statement or any written statement made by Dr. Witt, in entering into the settlement agreement and judgment that followed. The request for peremptory instruction should have been granted by the trial court, and for that reason the judgment of the trial court is reversed and judgment is here rendered for the appellant.

There are other assignments of error in the record which, in our opinion, would require that the judgment of the trial court be reversed and the cause remanded for a new trial, but, being of the opinion that judgment should be rendered here for appellant, we do not pass on these assignments of error.

Reversed and rendered.